AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means   ☑ Original   ☐ I


CLERK'S OFFICE
A TRUE COPY
Apr 30, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 25-M-415 (SCD) |
| information associated with Hannah.Dugan@wicourts.gov that is stored at premises controlled by the Director of Wisconsin State Courts. | ) ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ____Eastern____ District of ____Wisconsin____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ____5-14-25____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ____Hon. Stephen C. Dries____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   ____4-30-25. 5:05 pm____             *Stephen C. Dri[es signature]*
                                                              *Judge's signature*

City and state:   Milwaukee, Wisconsin             Hon. Stephen C. Dries, United States Magistrate Judge
                                                              *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

### Certification

  I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

*(Evidence to be searched)*

The property to be searched is a government owned work email account in the custody and control of the Director of Wisconsin State Courts (collectively the "Subject Account"):

    a. Electronically stored images of the email account Hannah.Dugan@WICOURTS.GOV, the work email account utilized by Judge Hannah Dugan while employed as a circuit court judge by the State of Wisconsin.

# ATTACHMENT B

*(Evidence to be seized)*

1. All records, information, and communications, including any records, information, and communications that have been deleted but are still available to the Director of Wisconsin State Courts, originating from or received by the Subject Account described in Attachment A that relate to violations of 18 U.S.C. §§ 1505 and 1071 between April 3, 2025, and April 25, 2025, including but not limited to:

   a. Records, information, and communications relating to policies or protocols for court staff to follow in the event of an ICE enforcement action within the Milwaukee County Courthouse Complex;

   b. Records, information, and communications relating to the presence of ICE officials, officers, or agents in the Milwaukee County Courthouse Complex;

   c. Records, information, and communications relating to Eduardo Flores-Ruiz, his attorney, or Case Number 2025CM000814;

   d. Records, information, and communications relating to interactions between Judge Hannah Dugan and law enforcement officers and agents on April 18, 2025; and

   e. Records, information, and communications relating to statements made by Judge Hannah Dugan regarding the events that occurred on April 18, 2025.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of

information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

This warrant authorizes a review of electronically stored information seized or copied pursuant to this warrant in order to locate evidence described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means



CLERK'S OFFICE
A TRUE COPY
Apr 30, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 25-M-415 (SCD)
information associated with )
Hannah.Dugan@wicourts.gov that is stored at premises )
controlled by the Director of Wisconsin State Courts. )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Eastern____ District of ____Wisconsin____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1505 | Obstructing or impeding a proceeding before a department or agency of the United States |
| 18 U.S.C. § 1071 | Concealing an individual to prevent his discovery and arrest |

The application is based on these facts:
Please see attached affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.*

_____
*Applicant's signature*

Lindsay Schloemer, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ____sworn via telephone____ *(specify reliable electronic means)*.

Date: 04/30/2025   _____
*Judge's signature*

City and state: Milwaukee, Wisconsin   Hon. Stephen C. Dries, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR A SEARCH WARRANT

I, Lindsay Schloemer, being duly sworn, state as follows:

## I. Background and Experience.

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") currently assigned to the Milwaukee Field Office. As such, I am an investigative or law enforcement agent of the United States authorized under Title 18, United States Code, Section 3052, that is, an officer of the United States who is empowered by law to conduct investigations, to make arrests, and to collect evidence for various violations of federal law. I am also a Certified Public Accountant ("CPA") and worked as a CPA for seven years before my employment with the FBI.

2. I am currently assigned to the White-Collar Crimes Squad, which investigates public corruption crimes, civil rights crimes, and financial crimes. During my tenure with the FBI, I have participated in all aspects of investigations including executing search warrants involving, among other things, the search and seizure of electronically stored information.

3. The statements in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement personnel and witnesses with knowledge of this matter. This Affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

## II. Purpose of the Affidavit

4. This affidavit is made in support of an application for a warrant to search, examine, and seize electronically stored information currently in the possession of the Director of Wisconsin State Courts and related to the work email account utilized by Milwaukee County Judge Hannah Dugan, while employed as a circuit court judge by the State of Wisconsin.

1

Case 2:25-mj-00415-SCD    Filed 04/30/25    Page 7 of 18    Document 1

5. As set forth below, there is probable cause to believe that within the above-referenced email account (hereinafter, the "Subject Account"), further described in Attachment A, there exists evidence of violations of Title 18, United States Code, Sections 1505 (Obstruction of Proceedings before Departments and Agencies) and 1071 (Concealing Person from Arrest), as described in Attachment B.

### III. Probable Cause.

6. Following an incident that occurred in and around Courtroom 615 of the Milwaukee County Courthouse on April 18, 2025, the FBI initiated an investigation of allegations that Milwaukee County Circuit Court Judge Hannah Dugan (1) obstructed or impeded a proceeding before a department or agency of the United States, in violation of Title 18, United States Code, Section 1505; and (2) concealed an individual to prevent his discovery and arrest, in violation of Title 18, United States Code, Section 1071. More specifically, the investigation related to allegations that Judge Dugan (1) confronted federal agents who intended to arrest Eduardo Flores-Ruiz ("Flores-Ruiz") pursuant to an administrative immigration warrant following his pretrial conference in the public hallway of the Milwaukee County Courthouse; (2) directed the agents to report to the Chief Judge's office; and (3) while she believed the agents were no longer in the vicinity of her courtroom, quickly adjourned Flores-Ruiz's pretrial conference off the record and directed Flores-Ruiz and his attorney to exit her courtroom from a nonpublic jury door.

#### A. Background.

7. I am aware from a review of public records that Flores-Ruiz was charged with three misdemeanor criminal offenses in Milwaukee County Circuit Court Case Number 2025CM000814 on March 18, 2025, and was scheduled to appear for a pretrial conference before Judge Dugan on the morning of April 18, 2025.

8. Agents from the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE ERO") had identified Flores-Ruiz as an individual who had previously been ordered removed and was removed from the United States. Based on fingerprints, reports, and other documents available to DHS and related to Flores-Ruiz, ICE ERO determined that Flores-Ruiz was not lawfully in the United States. On or about April 17, 2025, an authorized immigration official found probable cause to believe Flores-Ruiz was removable from the United States and issued a warrant for his arrest. The warrant provided, "YOU ARE COMMANDED to arrest and take into custody for removal proceedings under the Immigration and Nationality Act, the above-named alien [Flores-Ruiz identified on warrant]."

9. On April 18, 2025, members of the Milwaukee ICE ERO Task Force traveled to the Milwaukee County Courthouse, with Flores-Ruiz's arrest warrant in hand, for the purpose of executing the warrant.

10. Task force members included an ICE ERO Deportation Officer, a Customs and Border Protection Officer, two FBI Special Agents, and two Drug and Enforcement Administration ("DEA") Special Agents. Task force members from the FBI and DEA went through courthouse security with no difficulty. However, the Deportation Officer and Customs and Border Protection Officer were asked to present additional identification, were initially told they would need to be escorted within the courthouse, and were temporarily delayed while security personnel contacted a supervisor. They were allowed to proceed unescorted after confirming the courtroom in which Flores-Ruiz was scheduled to appear and that they planned to arrest him after his court appearance. It is reasonable to infer from these interactions that courthouse security had received a

3

communication directing them to treat law enforcement officers associated with ICE differently than other law enforcement officers and agents.

11. Upon arriving at Courtroom 615, two of the task force members alerted Judge Dugan's courtroom deputy that they were part of an ICE task force and had a warrant to arrest Flores-Ruiz. They also confirmed the task force's intent to arrest Flores-Ruiz in the public hallway after his court appearance had concluded.

12. All task force members then waited outside of Courtroom 615. At some point, a woman approached and took photographs of task force members on her cellphone.

13. Shortly thereafter, Judge Dugan and another judge, both dressed in their judicial robes, came into the public hallway and addressed members of the task force. According to witnesses, Judge Dugan was visibly upset and had a confrontational, angry demeanor. Judge Dugan initially asked if a task force member was present for a court appearance and stated that the task force member would need to leave the courthouse when the task force member answered, "no." When Judge Dugan was told that the task force was there to effectuate an arrest, she asked if they had a judicial warrant. A task force member responded, "No, I have an administrative warrant." Judge Dugan then stated that the task force member needed a judicial warrant. In response, the task force member stated that they were in a public space and had a valid immigration warrant. Judge Dugan asked to see the administrative warrant and the task force member offered to show it to her. Judge Dugan then demanded that task force members speak with the Chief Judge.

14. The task force members were escorted down the hallway towards a set of double doors that led to the Chief Judge's office. Judge Dugan returned to the vicinity of her courtroom. The other judge stayed with the task force members, obtained a copy of the administrative warrant,

4

Case 2:25-mj-00415-SCD    Filed 04/30/25    Page 10 of 18    Document 1

and asked to speak with the Chief Judge. A task force member then spoke with the Chief Judge, who was not in the building, over the phone about the warrant and the task force's arrest plans.

15. In the meantime, Judge Dugan returned to her courtroom. The pretrial hearing for Flores-Ruiz's case was adjourned off the record. Multiple witnesses reported seeing Judge Dugan direct Flores-Ruiz and his attorney to exit through the non-public jury door. Flores-Ruiz and his attorney used that door to exit the area and were able to leave the courthouse. Task force members eventually confronted Flores-Ruiz outside of the courthouse and identified themselves. Flores-Ruiz fled and was arrested after a short foot chase.

16. Based upon the above-referenced information and other evidence obtained during the course of the investigation and detailed in a supporting affidavit, I applied for and obtained a criminal complaint charging Judge Hannah Dugan with violations of 18 U.S.C. §§ 1505 and 1071. The criminal complaint was signed by United States Magistrate Judge Stephen C. Dries on April 24, 2025. Judge Dugan made her initial appearance on the criminal complaint on April 25, 2025.

**B.    Preservation request.**

17. As part of the FBI investigation into the above-referenced matters, on April 19, 2025, Milwaukee County, the Milwaukee County Sheriff's Department, and the Milwaukee County Circuit Court were served with a request to preserve, among other things, all communications (including emails, text messages, and instant messages) made on government-owned devices, computers, or communication platforms on April 18, 2025, related in any way to Wisconsin v. Eduardo Flores-Ruiz, Case No. 2025CM000814, or the arrest of Flores-Ruiz. They were also asked to preserve all policies in effect as of April 18, 2025, relating to access to public spaces in the Milwaukee County Courthouse by federal law enforcement and all communications disseminating that policy to courthouse security, staff, and judicial officers.

18. Based on the above-referenced preservation request and the short lapse of time since the events described in this affidavit, I believe there is probable cause to believe that relevant communications exist on the Subject Account. Based on my knowledge, training, and experience, I also know that electronic communications are typically stored for some period of time and, even when communications have been deleted by an email account user, they can be recovered months or years later using forensic tools.

C. **Media reporting and relevant email communications.**

19. I am aware that two prior arrests in public areas of the Milwaukee County Courthouse Complex of individuals who were not lawfully present in the United States received public attention. These arrests were also the subject of email communications amongst court staff. For example, on April 4, 2025, the Milwaukee Journal Sentinel published an article describing two arrests made by ICE officials that occurred in the public hallways of the Milwaukee County Courthouse Complex on March 20, 2025, and April 3, 2025. The article cited an email sent by Chief Judge Carl Ashley on April 3, 2025, to courthouse staff informing them of the arrests and noting, "If these detentions occurred in the courtroom, I believe it would have directly interfered with our judicial process. I'm not sure if we have the authority to intervene in what happens in a public hallway." According to the article, Chief Judge Ashley's email indicated that he was seeking guidance on the matter from the Office of Corporation Counsel and the Director of States Courts. The email also directed staff to tell Judge Ashley if they learn of other ICE operations in the courthouse complex.

20. On April 8, 2025, the Milwaukee Journal Sentinel reported that Chief Judge Ashley had indicated to a reporter that he was "working on creating a policy [regarding ICE enforcement actions inside the courthouse] that is consistent with the law and consistent with allowing people access."

21.     I am aware that the FBI's investigation of the events involving Flores-Ruiz that occurred at the courthouse on April 18, 2025, also received public attention. On April 22, 2025, based on unknown sources, various news outlets reported that the FBI was investigating Judge Dugan's actions. Some of those outlets, including the Milwaukee Journal Sentinel, published excerpts from an email chain initiated by Chief Judge Carl Ashley on April 18, 2025, following the incident involving Flores-Ruiz. I have reviewed a copy of that email chain, which was provided by one of its recipients. Chief Judge Ashley's original email included the subject line, "U.S. Immigration and Customs Enforcement Agents at the Courthouse Complex Today, April 18th," and was addressed to numerous state and county employees, including a list serve group entitled, "Judges-Milwaukee@WIcourts.gov." The email described Chief Judge Ashley's understanding of the events that precipitated the arrest of Flores-Ruiz.[1] Chief Judge Ashley's email also stated, "All of the agent's actions were consistent with our draft polices [sic], but we're still in the process of conferring on the draft." In a "reply-all" email dated April 21, 2025, Judge Dugan responded that, "As a point of clarification below, a warrant was not presented in the hallway on the 6th floor." Another participant in that email chain included a Milwaukee County Judge who expressed opinions regarding ICE administrative warrants and that judge's understanding of a "proposed protocol" for responding to ICE arrests in the Milwaukee County Courthouse Complex.

22.     On April 28, 2025, the Milwaukee Journal Sentinel published an article about the criminal charges against Judge Dugan. The article included excerpts from an interview with Chief Judge Ashley in which he explained that he and others were still working to draft a policy regarding ICE enforcement actions within the courthouse. The article quoted Chief Judge Ashley as saying,

---

[1] Through investigation, I know that Chief Judge Ashley was not present in the Milwaukee County Courthouse Complex on April 18, 2025, but, as referenced above, spoke on the phone with a member of the ICE ERO task force about the plans to arrest Flores-Ruiz.

"We're trying to work out a process where there can be respect for the courtroom, and what we're doing, but allow the immigration and customs enforcement to do what they need to do as well." Judge Ashley also stated that administrative warrants can be used to make arrests in the public areas in the courthouse and noted, "the reality is, for my colleagues, we don't have control in the public hallways."

23. In light of the above-referenced media reporting, it appears that Chief Judge Ashley, Judge Dugan, and others have utilized their work email accounts to communicate about (1) ICE enforcement actions within the Milwaukee County Courthouse Complex, (2) draft policies and protocols to be followed when federal law enforcement officers intend to arrest an individual within the courthouse pursuant to an administrative warrant, and (3) the events involving Flores-Ruiz, members of the ICE ERO task force, and Judge Dugan on April 18, 2025. It also appears that while certain protocols relating to ICE enforcement actions within the Milwaukee County Courthouse Complex had been discussed amongst court staff, and some protocols may have been implemented, no formal policy was in place on April 18, 2025.

24. Based on the foregoing, I believe that communications (including emails, text messages, and instant messages) sent to or originating from the Subject Account about the above-referenced topics could include information relevant to Judge Dugan's knowledge and intent while interacting with members of the ICE ERO task force, Flores-Ruiz, and his attorney on April 18, 2025. Such communications could also shed light on what, if any, expectations Judge Dugan believed were in place for court staff who encountered ICE officials within the courthouse. Finally, I believe communications from Judge Dugan about the events of April 18, 2025, may include admissions or omissions that are direct or circumstantial evidence of the crimes with which she has been charged.

D. **Nature of examination and manner of execution**.

25. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination and copying of the electronically stored information relating to the Subject Account consistent with the warrant. The examination may require authorities to work with representatives of the Director of the Wisconsin State Courts to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Subject Account to human inspection in order to determine whether they contain evidence described by the warrant.

26. The execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

IV. **CONCLUSION.**

27. Based on the above information, I respectfully submit that there is probable cause to believe that evidence relating to the crimes with which Judge Hannah Dugan has been charged, namely violations of 18 U.S.C. §§ 1505 and 1071, will be found on the Subject Account. I therefore respectfully request that this Court issue the requested warrant.

## ATTACHMENT A

*(Evidence to be searched)*

The property to be searched is a government owned work email account in the custody and control of the Director of Wisconsin State Courts (collectively the "Subject Account"):

    a.    Electronically stored images of the email account Hannah.Dugan@WICOURTS.GOV, the work email account utilized by Judge Hannah Dugan while employed as a circuit court judge by the State of Wisconsin.

# ATTACHMENT B

*(Evidence to be seized)*

1. All records, information, and communications, including any records, information, and communications that have been deleted but are still available to the Director of Wisconsin State Courts, originating from or received by the Subject Account described in Attachment A that relate to violations of 18 U.S.C. §§ 1505 and 1071 between April 3, 2025, and April 25, 2025, including but not limited to:

    a. Records, information, and communications relating to policies or protocols for court staff to follow in the event of an ICE enforcement action within the Milwaukee County Courthouse Complex;

    b. Records, information, and communications relating to the presence of ICE officials, officers, or agents in the Milwaukee County Courthouse Complex;

    c. Records, information, and communications relating to Eduardo Flores-Ruiz, his attorney, or Case Number 2025CM000814;

    d. Records, information, and communications relating to interactions between Judge Hannah Dugan and law enforcement officers and agents on April 18, 2025; and

    e. Records, information, and communications relating to statements made by Judge Hannah Dugan regarding the events that occurred on April 18, 2025.

    With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of

information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

This warrant authorizes a review of electronically stored information seized or copied pursuant to this warrant in order to locate evidence described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.